Levi Z. BEDGOOD, individually and on
behalf of others similarly
situated, Plaintiffs,

v.

Max CLELAND, in his capacity as
Administrator of the Veterans
Administration, Defendant.

Civ. No. 4–80–596.

United States District Court,
D. Minnesota,
Fourth Division.

July 29, 1982.

See also 521 F.Supp. 80.

M. Francesca Chervenak and Laurie N. Davison, Legal Aid Society of Minneapolis, Minneapolis, Minn., for plaintiffs.

Deborah Kleinman McNeil, Asst. U.S. Atty., Minneapolis, Minn., for defendant.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Plaintiff Levi Z. Bedgood brings this action on behalf of himself and all others similarly situated against defendant Max Cleland in his capacity as the Administrator of the Veterans Administration (VA) at-tacking on due process grounds the notice and hearing procedures used in connection with reductions, terminations, or suspensions of veterans' pension benefits. Plaintiffs seek to hold defendant in contempt of court for alleged violations of an order entered by a Maryland District Court and ask for declarative and injunctive relief requiring that certain procedures be followed by the VA. Jurisdiction is alleged under 28 U.S.C. §§ 1361 and 1331.

Plaintiffs move for summary judgment, enforcement of judgment, and for contempt. Defendant moves to dismiss or for summary judgment.

*Background*

Based upon the factual stipulation of the parties and the affidavits, depositions, and exhibits filed herein, the following facts appear to be undisputed. Plaintiff Levi Z. Bedgood is a sixty-two year old man who has received a veteran's disability pension since April, 1969. The pension is his sole source of income. Upon his admittance to a nursing home in 1979, his pension benefits were raised to the "aid and attendance rate." When the VA was subsequently informed by an attendant at the nursing home that he had left the facility, it required him to furnish certain information and undergo a medical examination to determine the extent of his disability.

The VA ratings board determined that his pension benefits should be lowered to the "housebound rate." Bedgood was informed of this change only after its effective date and was not given a copy of the board's decision. He then brought this action and sought to obtain a preliminary injunction forbidding defendant to reduce, terminate, or suspend his benefits without advance notice and a hearing.

On February 12, 1981, the court issued an order which (1) certified a class of all recipients of VA pension benefits in the State of Minnesota whose pension benefits have been or may be reduced, terminated, or suspended without adequate advance notice and a hearing prior to a change in benefits; (2) ordered defendant to restore Bedgood's

benefits to their former level until he was given adequate notice and a hearing; and (3) preliminarily enjoined defendant from reducing, terminating, or suspending pension benefits to classmembers without providing adequate advance notice, the form of which was specified in the order. 521 F.Supp. 80.

Upon subsequent motion of defendant and receipt of new evidence, the court modified the preliminary injunction on April 30, 1981, to except from the notice requirement changes based on unambiguous numerical information supplied by the claimant after notice that the information would be used to calculate the monthly benefit amount and based on reliable information that the claimant had died.

Bedgood was afforded a hearing on the decision to reduce his benefits before a St. Paul VA ratings board panel on April 1, 1981. The medical member of the rating panel had participated in the initial decision to reduce Bedgood's benefits. The panel determined that Bedgood was not entitled to benefits at the aid and attendance rate, thus affirming the previous decision. This decision was based on everything in Bedgood's file, not only on the evidence adduced at the hearing. Bedgood was not sent a copy of the board's decision.

Bedgood's case subsequently came before the VA's central office for random discretionary review. It determined that Bedgood had been entitled to benefits at the aid and attendance rate even after he left the nursing home and voided the rating board's decision. He was awarded benefits at the aid and attendance rate retroactively.

The parties have stipulated that the way Bedgood's hearing was conducted and the way a decision was reached following his hearing was consistent with the VA's policies and procedures.

*Discussion*

### 1. Background: *Plato v. Roudebush*

Plaintiffs contend that defendant is required to follow certain procedures set out in *Plato v. Roudebush,* 397 F.Supp. 1295 (D.Md.1975). The *Plato* court certified a nationwide class of "all individuals whose individual VA monthly pension benefits have been or may in the future be administratively reduced, terminated, or suspended without first being afforded adequate advance notice and the opportunity for a hearing prior to the change in monthly pension benefits." *Id.* at 1301. The court then declared in its judgment that the VA had a due process obligation to provide classmembers with adequate notice prior to decrease in VA pension benefits and to provide a full hearing thereon.[1] It ordered the VA not to reduce, terminate, or suspend monthly pension benefits until it afforded the individual timely and adequate notice detailing the reasons for the change, its effective date, and the available review procedure, and also afforded the opportunity for a hearing at which the individual could confront and cross-examine witnesses, be represented by counsel, and receive a reasoned decision by an impartial decisionmaker.[2] Judgment was entered in *Plato* on July 7, 1975, and no appeal was taken by defendant.

Plaintiffs contend that the *Plato* decision is res judicata as to the issues herein and also seek to enforce the decision in this court in a motion for contempt. They claim that defendant is in violation of the order entered in *Plato* in a number of respects. Specifically, they allege that predetermination notices are not provided in all cases required, that the content of the notices is insufficient, and that the hearings supplied do not comply with *Plato*'s requirements (that the decisionmaker be impartial, the

---

1. An exception to the hearing requirement was made for changes based on (1) mere application of numerical standards to clear written statements of fact made by the beneficiary to the VA with notice that such facts would be used to calculate benefits when said statements are conclusively determinative of his entitle-

ment, (2) reliable information that the pension recipient has died, or (3) the beneficiary's failure to return the annual income questionnaire. *See Plato v. Roudebush,* Civil No. B–74–641 (D.Md. July 7, 1975) (unpublished judgment).

2. See note 1.

decision be based on the evidence adduced at the hearing, claimants be allowed to confront and cross-examine witnesses, and claimants be provided with a copy of the decision).

### 2. *Defendant's Motions to Dismiss*

■ Defendant first moves to dismiss for mootness. He contends that the VA has recently amended its nationwide notice procedures so that all proper due process is provided petitioners and no controversy remains.

Plaintiffs admit that proper notice and a predetermination hearing are provided in most cases, but they contend that the requirements of *Plato* have not been met in that changes in benefits are made without notice and hearing based on clear oral information from the claimant and non-numerical information from the claimant. The *Plato* decision excepted from the notice and hearing requirement only changes based on application of numerical standards to clear written statements of fact, which were typically made in the annual income questionnaire, reliable information that the beneficiary had died, or failure to return the questionnaire. *Plato v. Roudebush,* 397 F.Supp. at 1312–1313; note 1, *supra*. Plaintiffs also have provided evidence of certain flaws in the hearing procedure itself, as noted above.

On the factual record now before the court, it cannot be said the issue is moot. Defendant denies in his answers to interrogatories that in Minnesota predetermination notices are not supplied in the categories of cases alleged by plaintiffs. However, the parties have stipulated that the VA manual does not require predetermination notice when a change is based on either oral or written information supplied by the claimant and that the decision whether to provide such notice is made by persons in the regional offices who rely on the claims manual without any other written instructions. John R. Kelly of the VA stated in his deposition that it is possible for there to be

a change in benefits without notice in certain cases of oral notice from a petitioner. These alleged practices would violate the *Plato* judgment, and the claim for mootness should therefore be denied.

■ Second, defendant moves to dismiss plaintiff's attack on VA hearing procedures for lack of standing. He contends that Bedgood was not injured by the hearing process because he ultimately retained benefits at the aid and attendance level as a result of the random discretionary review of his file.[3]

■ Generally, to have standing a plaintiff must himself have suffered the injury he seeks to address. This requirement is necessary to assure the concrete adverseness which sharpens the issues to guarantee the existence of a genuine case or controversy. *Urban Contractors Alliance v. Bi-State Development Agency,* 531 F.2d 877, 881 (8th Cir.1976) (quoting *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)). Similarly, unless the named plaintiff purporting to represent a class establishes a case or controversy with a defendant, he may not seek relief for himself or the class. *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). But where the class has been certified, the case need not be dismissed simply because the specific controversy between the class representative and the defendant no longer exists after certification. *Sosna v. Iowa,* 419 U.S. 393, 399–403, 95 S.Ct. 553, 557–559, 42 L.Ed.2d 532 (1975). *Accord United States Parole Commission v. Geraghty,* 445 U.S. 388, 398, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980). In addition, where a named plaintiff had a personal stake in the outcome at the outset and the claim may arise again with respect to the plaintiff, the litigation may be allowed to continue notwithstanding the named plaintiff's lack of a current stake. *Id.*

Under the circumstances of this case, plaintiff Bedgood continues to have stand-

---

**3.** Defendant's arguments may more properly be considered a specialized mootness claim. *See*

*Sosna v. Iowa,* 419 U.S. 393, 401, 95 S.Ct. 553, 558, 42 L.Ed.2d 532 (1978).

ing. He clearly had standing at the beginning of the suit when he faced reduction of his pension benefits. His efforts to administratively overturn the decision were unsuccessful. Only through the happenstance of a random discretionary review was the reduction overturned. Moreover, as a continuing recipient of VA Benefits he may again be subject to reductions and participate in hearings. He may again receive allegedly improper hearing procedures but review could be evaded by the central office taking action in the case. It should also be noted that there is a continuing controversy between classmembers and defendant and that the class was certified with Bedgood as the representative prior to the reinstatement of his benefits.

### 3. *Plaintiffs' Motion for Contempt*

■ Plaintiffs have registered the *Plato* judgment in this court and now seek to secure its enforcement through a contempt proceeding pursuant to 28 U.S.C. § 1963.[4] That section does not, however, allow enforcement of injunctions. *See Stiller v. Hardman,* 324 F.2d 626, 628 (2d Cir.1963).

Plaintiffs have provided no authority, nor is the court aware of any, for the proposition that a federal district court may find a defendant in contempt of another court's order. Contempt has traditionally been viewed as an affront to the court issuing the order. *See e.g. Leman v. Krantler-Arnold Hinge Last Co.,* 284 U.S. 448, 452, 52 S.Ct. 238, 240, 76 L.Ed. 389 (1932) ("Disobedience constituted contempt of the court which entered the decree ..."); *Wilson v. United States,* 26 F.2d 215, 218 (8th Cir. 1928) ("it is the general rule that only the court which has been offended can exercise the power [of contempt]."). Plaintiffs' motion to find defendant in contempt of the *Plato* decision should be denied.

### 4. *Res Judicata*

Plaintiffs contend that *Plato v. Roudebush,* 397 F.Supp. 1295 (D.Md.1975), and the judgment entered therein is res judicata as to the issues herein, barring defendant from relitigating them.

■ Res judicata is applicable where (1) there has been a previous action between the same parties, (2) involving the same subject matter, in which (3) final judgment has been rendered with respect to the same cause of action or claim. *Bryson v. Guarantee Reserve Life Insurance Co.,* 520 F.2d 563, 565, 566 (8th Cir.1975); *Rhodes v. Jones,* 351 F.2d 884, 886 (8th Cir. 1965), *cert. denied* 383 U.S. 919, 86 S.Ct. 914, 15 L.Ed.2d 673 (1966). A judgment in a class action is res judicata as to all classmembers except for those who opt out of the class. *Whitmore v. Tarr,* 318 F.Supp. 1279, 1285 (D.Neb.1970); *Snyder v. Harris,* 268 F.Supp. 701, 704 (E.D.Mo.1967), *aff'd,* 390 F.2d 204 (8th Cir.1967), *aff'd,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969).

■ The above requisites have been met, but since plaintiffs seek to apply the doctrine of res judicata offensively, further analysis is necessary.[5] The policy matters considered in *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 330–332, 99 S.Ct. 645, 651–652, 58 L.Ed.2d 552 (1979), involving offensive use of collateral estoppel, provide guidance in this case. There the court noted that the purpose of collateral estoppel, like res judicata, was to protect a party from being required to relitigate the same issue with the same party or a privy and to promote judicial economy by preventing needless litigation. *Id.* at 326, 99 S.Ct. at 654. It held that the trial court may, in its discretion, allow offensive use of collateral estoppel

---

**4.** That section provides in relevant part that [a] judgment in an action for the recovery of money or property now or hereafter entered in any district court which has become final by appeal or expiration of time for appeal may be registered in any other district by filing therein a certified copy of such judgment. A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

**5.** For an example of the offensive use of res judicata see *Whitmore v. Tarr,* 318 F.Supp. 1279 (D.Neb.1970) (res judicata effect of prior judgment in class action used to block plaintiff's induction into armed services).

where there is no unfairness to the defendant, and the policy in favor of judicial economy would not be frustrated. *Id.* 439 U.S. at 329–331, 99 S.Ct. at 650–651; *see United States v. Karlen,* 645 F.2d 635, 639 (8th Cir.1981).

In the circumstances presented in this case, use of res judicata is appropriate. There will be no harm to defendant. The VA was afforded a full and fair opportunity to litigate the issues in *Plato* and had every reason to pursue them vigorously. Judicial economy will be served. Application of the doctrine will not reward plaintiffs for refraining from taking part in the prior action; they were included in the class. Moreover, application of the doctrine will foreclose the necessity to litigate matters which were fully litigated in the *Plato* decision. Finally, application of the doctrine here will avoid the burden to plaintiffs of having to relitigate the same issues raised and decided in their favor in *Plato* as a prerequisite to securing their rights under that order.

Defendant argues that judicial economy will not be served by application of res judicata because he may be faced with similar actions to enforce the *Plato* judgment all over the nation, thus leading to a multiplicity of suits. However, if such suits are filed attacking defendant's practices, it would be far more efficient for the courts to give res judicata effect to a prior judgment rather than to relitigate the matter in each case.

Defendant further argues that if res judicata is applied herein, it should be applied to bar the present suit. Such a result was reached in *Watts v. Veneman,* 476 F.2d 529 (D.C.Cir.1972). There the court held that claims of certain plaintiffs should be dismissed because the Supreme Court had decided in their favor on the same issue in a previous case, and they could be granted no further relief by the trial court. The court

was specifically assured the government would provide them with certain payments as required by the prior judgment. *Id.* at 532. By contrast, plaintiffs herein admit they are entitled to no more relief than they received in *Plato,* and there has been no assurance that the relief they were adjudged to be entitled to by the *Plato* court was afforded them. The record, in fact, indicates that Bedgood was not afforded the notice and process required by *Plato.*[6]

In allowing offensive use of res judicata, the unique factual circumstances presented herein must be considered. Plaintiffs have been adjudged to be entitled to certain relief from defendant in a prior case. Under defendant's view of the law they would be able to enforce the judgment only by traveling to Maryland and seeking enforcement before that court, even though a nationwide class was certified. This requirement would most likely foreclose enforcement by plaintiffs, who typically are persons of limited resources. Under defendant's alternative view, plaintiffs would be required to relitigate the very matters fully litigated in the Maryland court to secure the relief they have already been adjudged to be entitled to. By contrast, giving preclusive effect to the *Plato* decision eliminates the inequity of plaintiffs being afforded a right but being foreclosed, as a practical matter, from enforcing it, and serves judicial efficiency.

### 5. *The Scope of Relief*

Plaintiffs admit that under the principle of res judicata they are entitled only to the relief obtained in *Plato* and are precluded from receiving additional or differing relief. *See Watts v. Veneman,* 476 F.2d 529, 532 (D.C.Cir.1972); *Thompson v. Zurich Insurance Co.,* 309 F.Supp. 1178, 1180 (D.C.Minn. 1970). Nonetheless, they have requested that the court order defendant to clearly and explicitly modify the VA's claims man-

---

**6.** Defendant also argued at oral argument that Plato should not be given res judicata effect because the law regarding the process due to those in plaintiffs' position has changed since that decision. A similar position was rejected by the Supreme Court in *Chicot County Drain-* *age District v. Baxter State Bank,* 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940). There the court rejected the appellant's argument that because the statute at issue in the prior case had later been declared unconstitutional, res judicata should not apply.

ual to comply with the *Plato* judgment and ask that the court take other steps appropriate to ensure compliance with the judgment, alleging that the VA has never fully complied with *Plato.*

Such additional relief at this point would be in addition to that in *Plato* and, by plaintiffs' own admission, inappropriate. At this point, where the court has only now granted final injunctive relief, it would be premature to take additional steps to ensure compliance with the order. The court expects that defendant will seek to carry out the requirements of its order in good faith. If defendant fails to do so the plaintiffs will be entitled to seek enforcement of the order.

### ORDER

Now therefore, based upon all the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. Defendant's motions to dismiss and for summary judgment are denied.

2. Plaintiffs' motion for contempt is denied.

3. Plaintiffs' motion for summary judgment, that *Plato v. Roudebush,* 397 F.Supp. 1295 (D.Md.1975), and the judgment rendered therein, on file with the Clerk of Court as Misc. No. 4–82–5, is res judicata as to the issues raised herein, is granted.

4. The defendant Administrator of the Veterans Administration, his successors in office, agents, employees, and all other persons in active concert and participation with him be and hereby are enjoined to continue paying and to refrain from reducing, terminating, or suspending any classmember's Veterans Administration monthly pension benefits until such time as the persons herein enjoined have first afforded that beneficiary timely and adequate notice detailing the reasons, effective date, and review procedures for the proposed reduction, termination, or suspension, and an opportunity for a hearing in which such beneficiary may present evidence, confront, and cross-examine adverse witnesses, be represented by counsel, and receive a decision by an impartial decisionmaker, based on evidence adduced at the hearing, and in which the reasons for the decision and evidence relied on are set forth, except that no such prior hearing need be afforded when the proposed reduction, termination, or suspension (1) is based upon the mere application of numerical standards to clear, written statements of fact, made by the beneficiary, to the Veterans Administration, with knowledge, or with notice that such statements of fact would be used to calculate benefits, provided that the beneficiary's statements of fact are accepted as true and that such statements of fact, standing alone, are conclusively determinative of the beneficiary's pension entitlements; or (2) is based upon reliable information from which it reasonably appears to the Veterans Administration that the pension beneficiary has died; or (3) is based upon the beneficiary's failure to return the annual income questionnaire.

5. Plaintiffs' motion for additional relief is denied.